IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARTIN W. JONES, | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 19-CV-4678 |
| | : | |
| TONY MARSAGLIA, *et al.*, | : | |
| *Defendants*. | : | |

## MEMORANDUM

**PAPPERT, J.**                                                                      **OCTOBER 29, 2019**

Martin W. Jones, a prisoner incarcerated at SCI Rockview sues Tony Marsaglia, Michael Kaminski, Frank Najero, and Joshua Mallery (Badge #99-30) pursuant to 42 U.S.C. § 1983. Jones seeks leave to proceed *in forma pauperis*. For the following reasons, the Court will grant Jones leave to proceed *in forma pauperis* and dismiss his Complaint with leave to amend.

I

Jones alleges constitutional claims against the Defendants in both their official and individual capacities. Jones contends that at the time of the incidents giving rise to his Complaint, Marsaglia was a police detective and Kaminski a police officer with Upper Southampton Police Department. (ECF No. 3 at 2-3, 12.)[1] Jones further alleges that Najera was a police detective with Upper Saucon Police Department and that Mallery was a detective with the Bucks County District Attorney's Office. (*Id.*)

---

[1] The Court adopts the pagination assigned to the Complaint by the CM/ECF system.

1

Jones's allegations appear to relate predominately to his arrest on April 11, 2018 pursuant to a warrant and matters stemming from the related criminal investigation. (*Id.* at 12.) In his Complaint, Jones avers initially that the "arrest and search was unlawful." (*Id.* at 3.) It appears, however, that although Jones sets forth four legal claims based on different factual events, these events seem to be somewhat intertwined. (*Id.* at 12-15.)

With respect to his first claim, and presumably by way of background, Jones states that on September 1, 2017, while he was stopped while driving by Upper Southampton Township police officers. (*Id.* at 13.) Jones claims that Jenny Lynn Jones (who is unrelated to him) handed police officers a blue bag containing five ounces of methamphetamine, giving permission to search its contents. (*Id.*) Jenny Lynn Jones was arrested that same day. (*Id.*) Jones, however, asserts that he was arrested eight months later, on April 11, 2018, based on charges resulting from the recovery of the five ounces of methamphetamine. (*Id.* at 12-13.) With respect to the April 11, 2018 arrest, Jones contends that Kaminski and Mallery served the arrest warrant on him after he had stepped out of his residence and closed the door. (*Id.* at 13.) Jones contends that Najera, Mallery, and Marsaglia then entered his residence "to see if probable cause existed, to obtain a search warrant" even though they only had a "body warrant" for him. (*Id.*) Jones asserts that the search of his residence was unlawful and tainted a later search. (*Id.* at 13-14.)

With respect to his next claim, Jones avers that between April 15 and April 29, 2018, Mallery reviewed prison phone calls between Jones and Jenny Jones while he

was incarcerated at Bucks County prison. (*Id*. at 14.) Jones contends that Mallery violated his rights by unlawfully reviewing and recording those prison phone calls. (*Id*.)

In his third claim Jones asserts that Najera unlawfully "seized" his [cell] phone "on or about January 2, 2018." (*Id*.) Jones submits that the content of the phone was reviewed by Mallery and Najera. (*Id*.) Jones further states that Najera admits in police reports that "he did not get written consent for it or a search warrant." (*Id*. at 14-15.) Jones contends that an unlawful search and "extraction of the phone was conducted, without consent and without a warrant." (*Id*.)

Jones's final claim is that the Defendants acted with deliberate indifference to his needs when he was questioned on January 2 and January 5, 2018 by Najera and Mallery without being read his *Miranda* rights. (*Id*. at 15.)

Jones seeks judgment in his favor and a "declaration that the acts and omission described [in his Complaint] violate [his] rights under the Constitution and laws of the United States against each Defendant, jointly and severally." (*Id*.) Jones seeks punitive and compensatory damages in an "amount of what [the] court deems just and fair." (*Id*.)

Some, if not all, of Jones's claims relate to his prosecution on drug-related charges. Public dockets from the Bucks County Court of Common Pleas show that on April 11, 2018, Jones was arrested by Kasminski on various drug charges including manufacture, delivery, or possession with intent to manufacture or deliver, as well as a drug conspiracy charge. *See Commonwealth v. Jones*, Docket No. CP-09-CR-0004070-2018 (Bucks Cty. Court of Common Pleas). These charges related back to an offense date of September 1, 2017. (*Id*.) Jones entered a plea of *nolo contendere* to all charges

3

stemming from the offense date of September 1, 2017 and was sentenced to a total term of two to four years imprisonment on September 4, 2018.  (*Id.*)

Additionally, on May 7, 2018 Jones was arrested by Mallery on charges of giving false or misleading information or testimony and a charge of harassment stemming from an offense date of April 13, 2018, while he was incarcerated at the Bucks County prison.  *See Commonwealth v. Jones*, Docket No. CP-09-CR-0004071-2018 (Bucks Cty. Court of Common Pleas).  On September 4, 2018, following a negotiated guilty plea, the court sentenced Jones to seven years in prison on the charge of giving false or misleading information or testimony, and dismissed the remaining charges.  (*Id.*)  It is not clear whether this prosecution or any related criminal investigation are implicated by Jones's Complaint.  None of convictions referenced above have been vacated or invalidated.[2]  (*Id.*)

II

The Court will grant Jones leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss

---

[2] Additionally, public dockets from the Court of Common Pleas of Lehigh County demonstrate that Jones was arrested by Najera on November 7, 2017 for the use and/or possession of drug paraphernalia.  Jones plead guilty on November 15, 2017.  *See Commonwealth v. Jones*, Docket No. CP-39-CR-0005920-2017 (Lehigh Cty. Court of Common Pleas).  Although it does not appear that this proceeding is implicated by the allegations in Jones's pending Complaint, this conviction has not been vacated or invalidated.  (*Id.*)

[3] However, as Jones is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

4

under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Jones is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011); *but see Argentina v. Gillette*, No. 19-1348, 2019 WL 2538020, at *1 (3d Cir. June 20, 2019) (holding that "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings"). The Court may also consider matters of public record. *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

III

Section 1983 of Title 42 of the United States Code provides in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

A

Jones's claims against all Defendants in their official capacities fail. Claims against officers named in their official capacities are indistinguishable from claims against the township. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690, n. 55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.*

As Jones has not pled a basis for municipal liability, his official capacity claims fail. To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). A plaintiff illustrates that a custom was the proximate cause of his injuries by demonstrating that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its

failure, at least in part, led to his injury." *Id.* (internal quotations and alterations omitted).

A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). "This consists of a showing as to whether (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

Nothing in Jones's Complaint plausibly suggests that the claimed constitutional violations stemmed from a municipal policy or custom, or municipal failures amounting to deliberate indifference; Jones has not stated a plausible basis for a claim against any municipal entity.

B

1

Jones appears to raise Fourth Amendment claims for his arrest pursuant to a warrant on April 11, 2018, a related entry into and search of his residence on that date, and the alleged warrantless search of his cell phone on January 2, 2018.[4] "Arrests made pursuant to a 'validly issued—if not validly supported—arrest warrant' generally

---

[4] To the extent Jones is pursuing these claims under other constitutional provisions, his claims fail. *See generally Albright v. Oliver*, 510 U.S. 266, 274 (1994) ("The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it.")

7

occur after the institution of legal process and, thus, sound in malicious prosecution rather than false arrest or imprisonment." *Noviho v. Lancaster Cty. of Pa.*, 683 F. App'x 160, 166 (3d Cir. 2017) (per curiam) (quoting *Myers v. Koopman*, 738 F.3d 1190, 1195 (10th Cir. 2013)); *see also Wallace v. Kato*, 549 U.S. 384, 390 (2007) (explaining that the tort of malicious prosecution "remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process"); *Morales v. Busbee*, 972 F. Supp. 254, 266 (D.N.J. 1997) ("The 'legal process' that separates a false arrest/imprisonment claim from a malicious prosecution claim may be in the form of an arrest warrant, an arraignment, or an indictment."). "To prevail on a malicious prosecution claim under section 1983, a plaintiff must show that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." *McKenna v. City of Philadelphia*, 582 F.3d 447, 461 (3d Cir. 2009). Additionally, in *Heck v. Humphrey*, the United States Supreme Court held that

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. 477, 486-87 (1994); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation) — no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit

8

(state conduct leading to conviction or internal prison proceedings) — if success in that action would necessarily demonstrate the invalidity of confinement or its duration." (emphasis omitted)).

The public docket for Jones's related criminal case reflects that a criminal complaint was filed against him on April 11, 2018 and an arrest warrant was issued on that same date. The docket also reflects that Jones pled *nolo contendere* to the charges for which he was arrested. As the charges did not terminate in Jones's favor, his constitutional claims challenging his April 11, 2018 arrest pursuant to the warrant are not currently cognizable in a § 1983 action. *Curry v. Yachera*, 835 F.3d 373, 378 (3d Cir. 2016) ("Curry entered a nolo contendere plea for the charges brought by Yachera, and under Pennsylvania law, that plea must be treated the same as a conviction under Heck"); *Brown v. City of Philadelphia*, 339 F. App'x 143, 146 n.2 (3d Cir. 2009) (per curiam) ("Because Brown alleges that his detention is pursuant to a warrant, his claim likely is in the nature of a claim for malicious prosecution (rather than false arrest or false imprisonment), which must await the termination of proceedings in his favor.").

However, *Heck* does not bar all Fourth Amendment claims. *Heck*, 512 U.S. at 487 n. 7 ("Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action [*i.e.*, one based on an unlawful search], even if successful, would not necessarily imply that the plaintiff's conviction was unlawful.") (citations omitted). The Court of Appeals for the Third Circuit has endorsed a "fact-based inquiry" for determining whether a Fourth Amendment claim based on an unlawful search is barred by *Heck. Gibson v. Superintendent*, 411 F.3d 427, 449 (3d Cir. 2005), *overruled on other grounds by Dique v. N.J. State Police*, 603 F.3d 181 (3d

9

Cir. 2010). Here, it is difficult to determine whether Jones's illegal search claims necessarily imply the invalidity of his convictions because he has not pled any facts explaining what was uncovered from the searches, and it is not clear at this time whether he is seeking damages for any related conviction or imprisonment. *See Heck*, 512 U.S. at 487 n.7 (explaining that even if *Heck* does not bar an illegal search claim, it precludes the plaintiff from obtaining relief based on the "'injury' of being convicted and imprisoned (until his conviction has been overturned)"). Accordingly, the Court cannot conclude at this time whether *Heck* bars Jones's claims based on the search of his home on April 11, 2018 or his phone on January 2, 2018.

Jones's illegal search claims implicate the Fourth Amendment. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "To search a person's home and belongings, police officers ordinarily must first seek a warrant based on probable cause supported by oath or affirmation. Warrantless searches are presumptively unreasonable under the Fourth Amendment." *Parkhurst v. Trapp*, 77 F.3d 707, 711 (3d Cir. 1996). Furthermore, the Supreme Court has held that a search of a cell phones generally requires a warrant, even if the phone is seized incident to an arrest. *See Riley v. California*, 573 U.S. 373, 401 (2014).

Here, Jones alleges that when the Defendants executed the warrant on April 11, 2018, they arrested him outside his home but entered his residence, searched it without a warrant, and seized unspecified items. Although Jones does not describe the seized items, given his allegations about a warrantless entry into and search of his residence, he may proceed on this claim at this early stage of the litigation. Jones may also

proceed at this time on his claim related to the January 2, 2018 search of his cell phone based on his allegation that Officers Najera and Mallery searched the phone without first obtaining a warrant.

2

Jones states that between April 15 and April 29, 2018, Mallery seized and reviewed prison phone calls between him and Jenny Jones at Bucks County Prison. (ECF No. 3 at 14.) To the extent that Jones raises a § 1983 claim regarding the seizure of his prison phone conversations without a warrant, that claim is meritless. "[P]risoners have no legitimate expectation of privacy and . . . the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells." *Hudson v. Palmer*, 468 U.S. 517, 530 (1984); *Doe v. Delie*, 257 F.3d 309, 316 (3d Cir. 2001) ("The Supreme Court has concluded that the Fourth Amendment right to privacy, to be free from unreasonable searches, is fundamentally inconsistent with incarceration."). Courts have extended that logic to conclude that the Fourth Amendment also does not apply to phone calls between inmates. *See Diana v. Oliphant*, No. 05-2338, 2007 WL 3491856, at *9 (M.D. Pa. Nov. 13, 2007), citing *United States v. Harrison*, 986 F. Supp. 280 (M.D. Pa. 1997) (courts have been consistent in holding that an inmate does not have a subjective expectation of privacy in an incoming phone call from an inmate or in outbound calls made from prison); *see also United States v. McMillan*, No. 15-305, 2018 WL 1035776, at *2 (M.D. Pa. Feb. 23, 2018) (citations omitted) (prisoners making non-privileged phone calls from prison telephones generally have no reasonable expectation of privacy in those calls); *cf. United States v. Shavers*, 693 F.3d 363, 390 (3d Cir. 2012) (finding that even non-prisoners calling an inmate may not have an objectively

reasonable expectation of privacy in phone conversation because such calls are known to be monitored and recorded), vacated on other grounds, ––– U.S. ––––, 133 S.Ct. 2877 (2013). Accordingly, Jones's claims with respect to any review and/or recording of prison phone calls are legally baseless.

3

Jones contends that he was not read his *Miranda* rights before being questioned by Najera and Mallery on January 2 and 5, 2018 following his arrest for possession of drug paraphernalia. (ECF No. 3 at 15.) To the extent Jones contends that the failure to have his *Miranda* rights read amounts to a constitutional violation, this claim is not plausible because he fails to plead that he made any statements in the course of a custodial interrogation and that any such statements were used against him in the course of a trial. *Cf. Renda v. King*, 347 F.3d 550, 552 (3d Cir. 2003) ("[A] plaintiff may not base a § 1983 claim on the mere fact that the police questioned her in custody without providing *Miranda* warnings when there is no claim that the plaintiff's answers were used against her at trial."). The Court will dismiss this claim because Jones has failed to provide a sufficient factual basis to state a plausible claim based on *Miranda*.

IV

The Court will grant Jones leave to proceed *in forma pauperis* and dismiss the following claims for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii): (1) claims against all Defendants in their official capacities; (2) claims based on his April 11, 2018 arrest; (3) claims based on the interception and review of Jones's phone calls in

April of 2018; and (4) claims based on any failure to read *Miranda* warnings to Jones before questioning him. The Court will dismiss these claims with prejudice due to futility of amendment, with the exception of Jones's claims against the Defendants in their official capacities and his claims based on the April 11, 2018 arrest,[5] which will be dismissed without prejudice. Jones will be given an opportunity to file an amended complaint in the event he can cure the deficiencies in those claims. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). If he chooses not to file an amended complaint, the Court will direct service at this time on his remaining claims, *i.e.*, his Fourth Amendment claims against the Defendants in their individual capacities based on the entry into and search of his residence on April 11, 2018 and the search of his cell phone on January 2, 2018. An appropriate Order follows.

**BY THE COURT:**

*/s/ Gerald J. Pappert*
**GERALD J. PAPPERT, J.**

---

[5] Jones's claims based on his April 11, 2018 arrest are dismissed without prejudice to Jones filing a new case raising these claims only in the event his underlying convictions are reversed, vacated, or otherwise invalidated.

13