## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARTIN W. JONES,

*Plaintiff,*

v.

TONY MARSAGLIA, *et al.*,

*Defendants.*

CIVIL ACTION
NO. 19-04678

**PAPPERT, J.**                                                   **November 12, 2020**

### MEMORANDUM

Martin Jones, a prisoner at SCI Camp Hill, sued Tony Marsaglia, Michael Kaminsky, Frank Najera and Joshua Mallery under 42 U.S.C. § 1983. Jones alleges each defendant unlawfully entered and searched his residence following his April 11, 2018 arrest. (Am. Compl. ¶ 5, ECF No. 36.) He also alleges Defendants conspired to violate his Fourth and Fourteenth Amendment rights. (*Id.* at ¶ 6.) Finally, he claims Najera and Mallery unlawfully searched his cell phones. (*Id.* at ¶ 8.) Marsaglia and Kaminsky move to dismiss all claims against them. (Marsaglia & Kaminsky Mot. to Dism. 6, ECF No. 37.)[1] Najera moves to dismiss the home search and conspiracy claims against him. (Najera Mot. to Dism. 2, ECF No. 39-1.) Finally, Mallery argues he is entitled to qualified immunity for the search of Jones's home, that Jones cannot maintain his § 1983 claim for the cell phone searches at this time and that Jones consented to the cell phone searches. (Mallery Mot. to Dism. 3, 8, ECF No. 38-1.) The

---

[1] The Court adopts the pagination assigned to the Amended Complaint and Motions to Dismiss by the CM/ECF system.

Court grants Marsaglia and Kaminsky's and Najera's Motions and grants in part and denies in part Mallery's Motion.

I

The Court has previously detailed the case's factual background.  *See* (Mem. Op., ECF No. 5).  In short, Jones alleges Defendants (who were police detectives or officers at all relevant times) conspired to, and violated, his Fourth and Fourteenth Amendment rights by searching his home and cell phones following his arrests in 2017 and 2018.

Jones purports to substantiate his conspiracy claim by attaching to his Amended Complaint a "Drug Strike Force Ops Plan"—which Mallery prepared—describing the plan to arrest Jones on April 11, 2018.  (*Id.* at 18.)  As part of that Plan, Najera and Mallery were to knock on Jones's front door in plain clothes while Kaminsky and Marsaglia covered the perimeter.  (*Id.*)  If Jones answered the door, Kaminsky and Marsaglia would move in and arrest him.  (*Id.*)  Najera would then "make general observations if inside the residence and[,] if probable cause exists, possibly obtain a search warrant or consent to search."  (*Id.*)  This written Plan, according to Jones, evinces Defendants' conspiracy to violate his civil rights.  (Am. Compl. at ¶ 12–14.)

In his Amended Complaint, Jones fails to plead facts detailing the alleged search of his residence, but he attaches Mallery's post-arrest summary as an exhibit.[2]  (Am. Compl. at 26–32.)  Contrary to the "Drug Strike Force Ops Plan"—which detailed

---

[2] To support his home search claims, Jones conclusorily alleges that "Defendants Marsaglia, [Kaminski,] Najera and Mallery, in their individual capacities, unlawfully entered and searched Plaintiff Jones's residence on April 11, 2018," and, "The search of Plaintiff's residence was not a protective sweep."  (Am. Compl. at ¶¶ 5, 7.)  Thus, the Court assumes that by attaching Mallery's post-arrest summary as an exhibit, Jones intended to rely on the facts therein to support his claims.

2

Defendants' plan for arresting Jones—Mallery's post-arrest summary describes the arrest.  The summary recounts that Kaminsky knocked on Jones's front door, Jones opened the door and Kaminsky arrested him.  (*Id.* at 27.)  Then Mallery approached the open door and spoke to two individuals who were inside the residence.  (*Id.*)  Through that conversation, Mallery suspected there were guns in the residence and learned that the male occupant had an illegal spring-assisted knife in his pocket.  (*Id.* at 28.)  When the female occupant began making furtive movements suggesting she may be reaching for a weapon, Mallery approached her inside the residence and noticed a gun case between a dresser and nightstand.  (*Id.*)  He also observed handgun ammunition in plain view.  (*Id.*)  At that point, another female "crawled out from behind a curtain/bedding area" where Mallery observed the ammunition.  (*Id.* at 29.)  Mallery ordered all three occupants out of the residence "for safety and to secure [the home] for a search warrant."  (*Id.*)  The summary, upon which Jones relies to allege facts supporting his claim, makes no mention of Marsaglia or Najera at Jones's residence.

Finally, Jones alleges that Najera confiscated two cell phones from him following a traffic stop and arrest in 2017.  (*Id.* at ¶ 17.)  He claims Najera and Mallery then unlawfully searched the cell phones without a warrant and before he signed a consent form.  (*Id.* at ¶ 18.)

## II

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when

the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

When the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). However, this "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). "Conclusory assertions of fact and legal conclusions are not entitled to the same presumption." *Id.* In addition to well-pleaded allegations in the complaint, the court may consider "exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *see* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). As Jones is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

III

The Court liberally construes Jones's Amended Complaint as setting forth three categories of claims: Jones first brings constitutional claims against Defendants under 42 U.S.C. § 1983 for the search of his residence. Second, he alleges Defendants

4

conspired to violate his civil rights in violation of § 1983 or 42 U.S.C. § 1985(3).  Finally,

Jones brings constitutional claims against Najera and Mallery under § 1983 for the cell

phone searches.

A

Section 1983 of Title 42 of the United States Code provides in part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of any rights,
> privileges, or immunities secured by the Constitution and laws, shall be
> liable to the party injured in an action at law, suit in equity, or other proper
> proceeding for redress.

42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff must allege (1) a person

deprived him of a right secured by the Constitution, and (2) the person violating that

right acted under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988).

The Court can dispense with Jones's claims regarding Marsaglia, Kaminsky and

Najera's alleged search of his home because, not only does Jones fail to plead facts

supporting those claims, he attaches to his pleadings and relies upon the post-arrest

summary.  According to that summary, none of these Defendants entered or searched

Jones's residence following his arrest.  *See* (Am. Compl. at 27–29); *Pension Ben. Guar.*

*Corp.*, 998 F.2d at 1196; *see also* Fed. R. Civ. P. 10(c).  The Court therefore dismisses

his claims against Marsaglia, Kaminsky and Najera for the alleged unlawful search of

his residence.

The Court also dismisses Jones's claim that Mallery unlawfully searched his

home because he fails to plead facts supporting that claim and the post-arrest summary

supports the conclusion that, at most, Mallery conducted a legal protective sweep of the

residence following Jones's arrest.  *See Maryland v. Buie*, 494 U.S. 325, 327 (1990)

5

("The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene."). According to the post-arrest summary, Mallery entered Jones's residence and observed a gun case and ammunition only after he knew one occupant possessed an illegal knife and the other occupant made furtive movements causing him to fear for his safety. (Am. Compl. at 28–29.) Those "specific and articulable facts"—not to mention the fact that Mallery's brief search *actually uncovered* a hidden occupant of the residence who may have posed a safety risk to officers—justify the search detailed in the post-arrest summary. *See Buie*, 494 U.S. at 327; (Am. Compl. at 29).

### B

Next, Jones raises civil rights conspiracy claims. As an initial matter, the Court did not give Jones leave to add new claims like this one, only to amend previously-pled claims. In any event, the conspiracy claims fail. Jones alleges that Defendants engaged in a conspiracy to violate his constitutional rights, which they committed to writing in a "Drug Strike Force Ops Plan." (Am. Compl. at 12–14, 18.) Jones's Amended Complaint does not specify a cause of action for his conspiracy claims, so the Court reviews them under both 42 U.S.C. § 1983 and § 1985(3). A § 1983 conspiracy exists when two or more conspirators agree to deprive a plaintiff of a constitutional right under color of law. *Abbot v. Latshaw*, 164 F.3d 141, 147–48 (3d Cir. 1998). To state a claim for conspiracy under § 1983, the plaintiff must establish both (1) the existence of a conspiracy involving state action; and (2) a deprivation of civil rights in

furtherance of the conspiracy by a party to the conspiracy. *Gale v. Storti*, 608 F. Supp. 2d 629, 635 (E.D. Pa. 2009). The plaintiff must allege that there was an agreement or meeting of the minds to violate his constitutional rights. *Id.* (citing *Startzell v. City of Philadelphia*, 533 F.3d 183, 205 (3d Cir. 2008)).

Jones fails to plead his § 1983 conspiracy claims with sufficient specificity to survive a motion to dismiss. Specific allegations of an agreement to carry out the unlawful actions are necessary to state a conspiracy claim. *Rosembert v. Borough of East Lansdowne*, 14 F. Supp. 3d 631, 648 (E.D. Pa. 2014). Jones refers to Defendants entering into a conspiracy generally, and the only specific agreement he alleges—the "Drug Strike Force Ops Plan"—was not in furtherance of denying him his civil rights. *See* (Am. Compl. 18.) Rather, that Plan laid out how Defendants would safely and lawfully arrest Jones before possibly seeking a search warrant for his residence.

To state a claim under § 1985(3), the plaintiff must allege "(1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29 (1983). The purpose of § 1985(3), however, is not to provide a federal remedy for all conspiracies that interfere with a plaintiff's federal rights. Rather, the claimant must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action" in order to state a claim for relief. *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Because Jones alleges no facts suggesting that

any action taken against him was on account of his membership in a protected class, the § 1985(c) claims, to the extent he raises any, must also fail.

C

Finally, Jones claims Najera and Mallery violated his Fourth Amendment rights by searching cell phones seized during his 2017 arrest.  Najera does not seek dismissal of the cell phone search claim against him.  Mallery does, claiming Jones failed to adequately plead this claim and that Jones consented before the search.  (Mallery Mot. to Dism. 8, ECF No. 38-1.)  Alternatively, Mallery argues *Heck v. Humphrey*, 512 U.S. 477 (1994), bars Jones's § 1983 claim because his conviction has not been invalidated or overturned.  (*Id.* at 9.)

Construing his Amended Complaint liberally, the Court concludes Jones has pled a plausible claim for the unlawful search of his cell phones.  *See Riley v. California*, 573 U.S. 373, 403 (2014) (generally, police need a warrant to search a cell phone seized incident to arrest).  Mallery properly attached the consent form as an exhibit to his Motion to Dismiss, but the Court cannot, at this stage, verify the authenticity of the form or whether Jones signed the form before or after Defendants searched his phone. *See* (Mallery Mot. to Dism. 49, Exhibit B, ECF No. 38); *In re Rockefeller Ctr. Props. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (a district court may rely on "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document").

Although Jones pled a plausible claim for relief, the Court must determine whether that claim is cognizable under *Heck*.  If it is not cognizable, the Court must

8

dismiss the claim as to both Najera and Mallery.  In *Heck*, the United States Supreme

Court held that

> [I]n order to recover damages for allegedly unconstitutional conviction
> or imprisonment, or for other harm caused by actions whose
> unlawfulness would render a conviction or sentence invalid, a § 1983
> plaintiff must prove that the conviction or sentence has been reversed
> on direct appeal, expunged by executive order, declared invalid by a
> state tribunal authorized to make such determination, or called into
> question by a federal court's issuance of a writ of habeas corpus.

512 U.S. 477, 486–87 (1994); *see also Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005)

("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the

relief sought (damages or equitable relief), no matter the target of the prisoner's suit

(state conduct leading to conviction or internal prison proceedings)—if success in that

action would necessarily demonstrate the invalidity of confinement or its duration."

(emphasis omitted)).

However, as this Court explained in its prior Memorandum Opinion, (ECF No.

5), *Heck* does not bar all Fourth Amendment claims. *Heck*, 512 U.S. at 487 n.7

("Because of doctrines like independent source and inevitable discovery, and especially

harmless error, such a § 1983 action [i.e., one based on an unlawful search], even if

successful, would not necessarily imply that the plaintiff's conviction was unlawful.")

(citations omitted).  District courts in this Circuit must conduct a "fact-based inquiry" to

determine whether a successful claim would necessarily imply the invalidity of the

plaintiff's conviction or sentence. *Gibson v. Superintendent*, 411 F.3d 427, 449 (3d Cir.

2005), *overruled on other grounds by Dique v. N.J. State Police*, 603 F.3d 181 (3d Cir.

2010).  Here, it is difficult to determine whether Jones's illegal-phone-search claim

necessarily implies the invalidity of his convictions because he has not pled facts

explaining what Najera and Mallery uncovered from the search, whether evidence obtained from his phone was used to convict him or whether he is seeking damages for any related conviction or imprisonment. *See Heck*, 512 U.S. at 487 n.7 (explaining that even if *Heck* does not bar an illegal search claim, it precludes the plaintiff from obtaining relief on the "'injury' of being convicted and imprisoned (until his conviction has been overturned)"). The Court lacks enough information to "make [the] threshold determination as to whether [Jones]'s § 1983 claim, if successful, would have the hypothetical effect of rendering the criminal conviction or sentence invalid." *Gibson*, 411 F.3d at 451. Mallery's Motion is therefore denied without prejudice to Defendants' ability to revisit this argument later in the proceedings on a fuller record.

IV

District courts must permit a curative amendment to dismissed complaints under Rule 12(b)(6), unless such amendment would be inequitable or futile. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). "Futility" means that the amended complaint would fail to state a claim upon which relief could be granted. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). The Court dismisses Jones's claims regarding Defendants' search of his home with prejudice because amendment would be futile. The post-arrest summary shows that Mallery was the only Defendant to enter Jones's home after his 2018 arrest and that he performed only a legal protective sweep. The Court dismisses Jones's conspiracy claims with prejudice, as well, because amendment would be futile. Jones bases these claims on the "Drug Strike Force Ops Plan," which he attached to his Amended Complaint. That document shows that

Defendants at no point conspired to violate Jones's civil rights.  Instead, they planned his arrest (pursuant to a valid warrant) presumably to ensure efficiency and officer safety.

An appropriate order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.